UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KODY J. CONGDON,

                       Petitioner,

      v.                                       Case No. 19-CV-1187

CATHY JESS,

                       Respondent.

# DECISION AND ORDER

## 1. Facts and Procedural History

There is no dispute that Kody Congdon did not commit the crime he was convicted of, third-degree sexual assault (ECF No. 21-5 at 36), an offense that proscribes non-consensual sexual intercourse, Wis. Stat. § 940.225(3)[1]. He pled guilty to this offense despite denying ever having had sexual intercourse, *see* Wis. Stat. § 939.22(36), with the victim. (ECF No. 21-5 at 56-74.) Even the state agreed that Congdon did not engage in sexual intercourse with the victim. (ECF No. 21-5 at 56-74.) However, Congdon and the state agreed that sexual contact, *see* Wis. Stat. § 939.22(34), occurred, although their versions as to the timing and nature of that sexual contact differed.

---

[1] All citations to the Wisconsin statutes reflect the 2003-2004 edition.

These unusual circumstances arose because the victim was thirteen years old at the time of the sexual contact. Congdon was only sixteen, but under Wisconsin law at the time any sexual contact with a person under the age of sixteen was a Class C felony, Wis. Stat. § 948.02, without regard to the age of the defendant or the consent of the victim. *See generally* Daryl J. Olszewski, *Statutory Rape in Wisconsin: History, Rationale, and the Need for Reform*, 89 Marq. L. Rev. 693 (2006). Due to a quirk in Wisconsin law, because Congdon had turned seventeen by the time he was charged, he was charged as an adult with two counts of second-degree sexual assault of a child. He was facing imprisonment of up to 40 years on each count. Wis. Stat. § 939.50(3)(c).

Wisconsin separately proscribed non-consensual sexual intercourse (without regard to the victim's age) as a less-severe Class G felony. Wis. Stat. § 940.225(3). Thus, the state allowed Congdon to plead guilty to one count of third-degree sexual assault, a crime he did not commit, so that he could avoid conviction of the more serious offense. This unusual arrangement was all explained to the circuit court at the time of Congdon's plea and supported by Wisconsin case law. (ECF No. 21-5 at 57-74); *see also State v. Harrell*, 182 Wis. 2d 408, 513 N.W.2d 676 (Ct. App. 1994). He was sentenced to probation.

Congdon is before this court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent previously sought to dismiss Congdon's petition on the ground that he was not in custody pursuant to the conviction he seeks to challenge.

(ECF No. 12.) The court denied that motion because setting aside his challenged conviction could result in Congdon receiving additional sentence credit, shortening his present incarceration by up to 108 days. *Congdon v. Jess*, No. 19-CV-1187, 2020 U.S. Dist. LEXIS 261010, at \*6 (E.D. Wis. Apr. 27, 2020). This was sufficient to establish "custody" under 28 U.S.C. § 2254(a). *Congdon*, 2020 U.S. Dist. LEXIS 261010, at \*6.

The respondent now argues that Congdon is not entitled to relief because his petition is untimely. (ECF No. 32 at 6-7.)

**2. Untimeliness**

A petition for a writ of habeas corpus under § 2254 must be filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Congdon was sentenced on August 31, 2006 (ECF No. 21-13) and did not appeal. His conviction became final on September 21, 2006, when the deadline for him to file notice of his intent to seek postconviction relief, *see* Wis. Stat. § 809.30(2)(b), passed without him doing so (ECF No. 21-14 at 59). Thus, the one-year clock under 28 U.S.C. § 2244(d)(1) started to run on that date.

Congdon's probation was revoked about a year later and he was sentenced to prison. (ECF Nos. 21-1 at 12; 21-14 at 59); *see also Congdon*, 2020 U.S. Dist. LEXIS 261010, at \*2 (discussing Congdon's custodial history). Department of Corrections records indicate that in years that followed he was released to extended supervision and then

3
Case 2:19-cv-01187-WED    Filed 02/08/22    Page 3 of 16    Document 39

revoked a few times, but nothing material happened until nine years later when, on July 18, 2016, Congdon filed a motion to withdraw his guilty plea. (ECF No. 21-2 at 1-27; *see also* ECF No. 21-1.) Following the circuit court's denial of the motion (ECF No. 21-5 at 39-54), the Wisconsin Court of Appeals on April 26, 2018, affirmed the circuit court's decision (ECF No. 21-8). The Wisconsin Supreme Court denied review on September 4, 2018. (ECF No. 21-11.) Congdon filed his habeas petition with this court a few weeks short of a year later on August 16, 2019. (ECF No. 1 at 12.)

Congdon acknowledges that he filed his petition too late, *see* 28 U.S.C. § 2244(d), but argues that his roughly ten years of tardiness should be excused because he is actually innocent.

The court may excuse the untimeliness of a petition if the petitioner proves that he is actually innocent. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Arnold v. Dittmann*, 901 F.3d 830, 836 (7th Cir. 2018) ("Actual innocence is an equitable exception that renders the time limit set forth in section 2244(d)(1) inapplicable."). Actual innocence requires a showing "that no reasonable juror would have found the defendant guilty." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). This is a demanding standard that is seldom met. *McQuiggin*, 569 U.S. at 386. The fact that the petitioner delayed in seeking habeas relief, as well as the length of that delay, are factors that the court is to consider

in assessing the petitioner's claim of actual innocence. *Id.* at 387, 400 ("The timing of such a petition, however, should seriously undermine the credibility of the actual-innocence claim.").

As noted, it is undisputed that Congdon is actually innocent of the crime he was convicted of committing. There is no evidence that he engaged in sexual intercourse with the victim, which is an element of the crime of third-degree sexual assault. But a person claiming actual innocence in the context of a plea bargain must prove that he is actually innocent not only of the crime of which he was convicted but also any more serious charge that the state dismissed as part of the plea bargain. *Bousley*, 523 U.S. at 624 (1998) ("In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.").

Thus, the court considers whether Congdon has proved that he is actually innocent of second-degree sexual assault of a child, the offense that the state initially charged. That statute, Wis. Stat. § 948.02(2), proscribes not only sexual intercourse but sexual contact, which is defined as

> the intentional touching of the clothed or unclothed intimate parts of another person with any part of the body clothed or unclothed or with any object or device, the intentional touching of any part of the body clothed or unclothed of another person with the intimate parts of the body clothed or unclothed, or the intentional penile ejaculation of ejaculate or intentional emission of urine or feces upon any part of the body clothed or unclothed of another person, if that intentional touching, ejaculation or

emission is for the purpose of sexual humiliation, sexual degradation, sexual arousal or gratification.

Wis. Stat. § 939.22(34).

The state alleged that Congdon forced the victim to touch his penis and that he sucked on her breast. (ECF No. 21-4 at 2.) Congdon's version as related during his plea hearing was that he touched the victim's breast and touched her pubic mound over her underwear, both of which constitute "intimate parts" under Wisconsin law, Wis. Stat. § 939.22(19). (ECF No. 21-5 at 58-59.) Congdon now insists that the version he acknowledged at his plea hearing (and reported to a presentence investigator) was a lie that he offered only because he wanted the benefit of the plea bargain.

The victim's statement was essentially the only evidence of Congdon's guilt. She initially identified a date of the incident but changed the date when Congdon proved that he was at a wedding on that date. (ECF No. 21-2 at 34-35.) Congdon reported he was not with the victim at any time during the range of new dates she offered because he had been with his family preparing for the wedding, which his family corroborated. (ECF No. 21-2 at 37.) The victim also reported that Congdon used a blanket in the incident. (ECF No. 21-2 at 31.) Although crime lab personnel detected semen on the blanket, DNA testing excluded Congdon as the source. (ECF No. 21-2 at 41.)

These facts could have led the jury to acquit Congdon had he gone to trial. However, it is far from a certainty that the jury would have acquitted Congdon. The fact that the thirteen-year-old victim waited over a month to report the incident could have

6

reasonably accounted for her confusion as to the date. A reasonable jury could have concluded that the incident occurred on some other date around the approximate period identified by the victim. And the jury likely would have been instructed that the state need not prove that the incident happened on any specific date. *See* Wis. JI-Crim. 255A. Or a reasonable jury could have disbelieved testimony that Congdon had been consistently with his family during the period identified by the victim.

As for the blanket, it was not turned over to police for over a month (ECF No. 21-2 at 33), which is one explanation for the absence of Congdon's DNA being on it. As the respondent notes, Congdon's biological material could have been washed away in that time. (ECF No. 31 at 11.) But there was also nothing about the victim's version of the assault that suggested that Congdon's semen would be found on the blanket. Thus, while evidence of Congdon's semen on the blanket would have been strong corroboration of the victim's report, the absence of Congdon's semen did very little to undermine it. Consequently, the victim's testimony would allow a reasonable jury to convict Congdon of second-degree sexual assault of a child.

Importantly, the victim's testimony would have been bolstered by powerful other acts evidence. (ECF No. 21-8, at 3, ¶ 4.) Shortly before Congdon pled guilty the court ruled that the state would be able to introduce at trial evidence that he had been adjudged delinquent for sexually assaulting another 13-year-old girl. (ECF No. 21-12 at 2.; *see also* ECF No. 21-13 at 10-11.)

Beyond this evidence, the respondent emphasizes that Congdon repeatedly confessed to the offense (ECF No. 32 at 9)—not only to his lawyer and to the presentence investigator but also to the court during his plea hearing. Congdon denies that he ever confessed to his lawyer and insists that the other confessions were coerced by virtue of his lawyer's insistence that he take a plea. (ECF No. 37 at 5.)

Congdon acknowledges that his claim of actual innocence fails unless the court were to find that his lawyer was not credible when she testified at a post-conviction hearing that Congdon confessed to her. (ECF No. 37 at 4.) The circuit court found Congdon's attorney credible. (ECF No. 21-16 at 8, 12.) This court must presume that the state court's factual finding that Congdon confessed to his attorney was correct. 28 U.S.C. § 2254(e)(1). Congdon has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Congdon was represented by Bridget Boyle, who by the time of Congdon's motion to withdraw his guilty plea had been disbarred for extensive professional misconduct, including repeated instances of untruthfulness to clients and courts. *Office of Lawyer Regulation v. Boyle*, 2014 WI 77, 356 Wis. 2d 331, 850 N.W.2d 201; *see also In re Boyle-Saxton*, 668 F.3d 471 (7th Cir. 2012) (order disbarring Boyle from practicing before the Court of Appeals for the Seventh Circuit). Congdon argues that Boyle's history of untruthfulness shows that the circuit court was wrong to find her credible.

Boyle testified at a post-conviction hearing that Congdon initially had "a rock-solid alibi." (ECF No. 21-14 at 14.) But when the victim changed the dates, although Congdon could generally account for where he was, the detail he could offer did not rise to the level of "legally … recognized" alibi. (ECF No. 21-14 at 24-25.) Congdon continued to deny having engaged in sexual contact with the victim (ECF No. 21-14 at 23) and the matter remained in a trial posture (ECF No. 21-14 at 9).

Given Congdon's consistent claim that he was innocent, Boyle arranged for him to take a polygraph a few days before trial. Boyle resorted to a polygraph in the hope that Congdon passing would persuade the state to drop the case, a tactic she had used in prior cases, including cases prosecuted by the same Assistant District Attorney prosecuting Congdon. (ECF No. 21-14 at 35.) However, Congdon "failed miserably." (ECF No. 21-14 at 35.)

By itself, this was largely inconsequential; it meant only that Boyle could not point to polygraph results to try to persuade the prosecutor to drop the case. Boyle remained ready to proceed to trial, at which Congdon could deny the charges and he and his family members could testify as to where he was during the period the victim alleged the assault occurred.

But Boyle informing Congdon that he failed the polygraph led to him admitting to her "on his own without him being prompted, without him being questioned [or] interrogated," that he had engaged in sexual contact with the victim, just not on the day

she alleged. (ECF No. 21-14 at 15, 26, 35, 37.) Because of this admission, Boyle could not permit him to testify. (ECF No. 21-14 at 15-16, 44); *see also* Wis. SCR 20:3.3(a)(3). Without Congdon's testimony, Boyle did not believe she would be able to obtain an acquittal, and thus her strategy shifted to negotiating a plea. (ECF No. 21-14 at 41, 44-45, 47.) This led to the agreement that Congdon plead guilty to one count of the lesser offense of third-degree sexual assault.

Congdon testified he never admitted to Boyle that he had sexual contact with the victim. (ECF No. 21-14 at 81-82.) He said that, after the polygraph, Boyle presented him with a plea agreement that she had already prepared and told him she was unwilling to take the matter to trial because she did not believe he was innocent. (ECF No. 21-14 at 75.) She said that, because he failed the polygraph, she could not have him testify and he should take the plea. (ECF No. 21-14 at 76.) Congdon continued to insist he was innocent, but Boyle continued for over an hour to pressure him to take a plea. (ECF No. 21-14 at 76.)

Congdon contends that he agreed to plead guilty only because Boyle said she would not represent him if he did not do so. (ECF No. 21-14 at 82.) He denied ever discussing the specific factual allegations with Boyle and agreed to them at the change of plea hearing only because she told him to sit quietly and agree with everything that was said. (ECF No. 21-14 at 83-84.)

The circuit court acknowledged that the issue was largely one of credibility. (ECF No. 21-16 at 5.) It acknowledged the relevance of Boyle's disciplinary history vis-à-vis her credibility, but correctly noted that it was just one factor, and the matter must be viewed under the totality of the circumstances. (ECF No. 21-16 at 5.)

The court noted that Congdon, likewise, had credibility problems in that he had a criminal history. (ECF No. 21-16 at 5-6.) Moreover, he had either lied to the presentence investigator and the court when he accepted the plea (ECF No. 21-14 at 86 (Congdon testifying he lied at his plea hearing when he said his plea was being made freely and voluntarily)), or to the court when he testified in support of his motion to withdraw his guilty plea and denied committing the crime. But the court stated it would likewise consider Congdon's credibility under the totality of the circumstances. (ECF No. 21-16 at 6.)

The court noted that Boyle was an experienced criminal defense attorney, handling thousands of cases over 20 years. (ECF No. 21-16 at 6.) By all indications, Boyle was prepared to proceed to trial. (ECF No. 21-16 at 6-7.) Boyle "testified consistently, coherently logically with respect to her involvement with Mr. Congdon, what she did, why she did it." (ECF No. 21-16 at 8-9.)

It was reasonable for the circuit court to credit Boyle over Congdon. By the time of the hearing, Boyle had already been disbarred. In fact, she had "filed a petition for the consensual revocation of her license to practice law in Wisconsin" and in effect pled

11
Case 2:19-cv-01187-WED   Filed 02/08/22   Page 11 of 16   Document 39

guilty to 37 counts of misconduct and 14 other pending investigations. *Boyle*, 2014 WI 77, ¶¶1, 7, 9. It was extremely unlikely she would ever be reinstated to practice law. Thus, she did not have a realistic fear of any further professional discipline. And she no longer had a professional reputation to protect.

Congdon's version of events was incredible. When he failed to recall specific details about the polygraph examination, Congdon said that he "was using a lot of drugs at the time" and so his "memory isn't the best for that situation." (ECF No. 21-14 at 74-75.) And yet he claimed to be able to recall very specific details about his conversation with Boyle immediately after the polygraph examination. Even more broadly, Congdon exhibited an extremely poor memory. For example, he could not recall if he had a trial with respect to his prior juvenile adjudication. (ECF No. 21-14 at 92.)

Even after Boyle allegedly pressured him to plead guilty to a serious crime he did not commit, Congdon continued to have Boyle represent him both when his probation was revoked and in other matters. (ECF No. 21-14 at 51.[2]) At his plea hearing, while answering simply to nearly all of the court's questions, Congdon went out his way to praise Boyle's services. When the court asked, "Have you been satisfied with the

---

[2] The circuit court docket indicates that Boyle did not withdraw from representing Congdon until February 10, 2016. (ECF No. 21-1 at 1.) Boyle had been disbarred more than two years earlier. *Boyle*, 2014 WI 77. However, she did represent Congdon in his sentencing after the revocation of his probation in 2007 and in other cases around the same time. (ECF No. 21-14 at 53, 57.) The docket indicates that she represented Congdon at least until March of 2009 when she wrote a letter to the court. (ECF No. 21-1 at 11. *But see* ECF No. 21-14 at 60 (Boyle testifying she was unsure if she continued to represent Congdon at that time).)

services of Ms. Boyle?" Congdon responded, "Yes, very happy." (ECF No. 21-5 at 70.) This spontaneous praise is inconsistent with Boyle having pressured Congdon to take a plea to an offense he did not commit.

Congdon's delay in seeking to withdraw his guilty plea also undermines the credibility of his claim of actual innocence, although perhaps not as strongly as a delay might in other cases. The court appreciates that it might not have been until his probation was revoked that the conviction presented material consequences. (*See* ECF No. 21-14 at 58.) But even then he was not spurred to take action (and, in fact, he continued to be represented by Boyle).

However, this is an unusual case where Congdon's continued fight in light of the delay could, on some level, add credibility to his claim of innocence. As discussed in the court's prior decision, he had been discharged from his sentence in 2017. *Congdon*, 2020 U.S. Dist. LEXIS 261010, at *3. If the court were to set aside his conviction, he would face trial on two counts of sexual assault of a child. And if convicted, he could be reincarcerated for a lengthier period.

This, however, is not enough to overcome the incredibility of so many other aspects of Congdon's claim. And it is notable that, if he succeeded in setting aside his conviction (and was acquitted if the state chose to retry him), he may avoid certain collateral consequences of his conviction, including having to register as a sex offender.

Finally, Congdon contends that Boyle's version of events does not square with her testimony that she was prepared to go to trial. Congdon argues that Boyle's decision to have him take a polygraph suggests she was not prepared to proceed to trial. If he passed, Boyle would present it to the prosecutor in an effort to persuade her to dismiss the charges. If he failed, she would encourage Congdon to plead guilty. Under either scenario there would be no trial.

The court disagrees with Congdon's premise. If Congdon passed the polygraph, it was far from certain that the prosecutor would agree to dismiss the charges. And while the failed polygraph significantly undermined Boyle's argument for dismissal, nothing about it affected his defense at trial. The results were confidential and inadmissible. And there is no ethical bar to a lawyer allowing a client to testify after having failed a polygraph.

In sum, Congdon has failed to show that the circuit court was unreasonable when it credited Boyle's testimony over that of Congdon.

3. **Conclusion**

Congdon has failed to show that he is actually innocent of the second-degree sexual assault charge that the state dismissed as part of the plea agreement. A reasonable jury could have convicted him based on the victim's testimony, notwithstanding evidence that Congdon was not with the victim on the alleged date of the incident and the absence of his DNA on a blanket. The circuit court also reasonably

credited Boyle's testimony over that of Congdon. As Congdon acknowledges, he cannot avoid the consequences of his untimeliness nor prevail on the merits of his underlying ineffective assistance of counsel claim unless the court found that the circuit court's credibility finding was unreasonable. (ECF No. 37 at 4.)

Because Congdon has failed to show that he is actually innocent, the court must dismiss Congdon's petition as untimely under 28 U.S.C. § 2244(d)(1).

Finally, pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 Proceedings, and 28 U.S.C. § 2253(c), the court must consider whether to grant Congdon a certificate of appealability. Because the court is dismissing the petition on procedural grounds, a certificate of appealability is appropriate only if reasonable jurists would find it "debatable whether the petition states a valid claim of the denial of a constitutional right" and it is "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court finds that, for the reasons set forth above, no reasonable jurist could conclude that Congdon is actually innocent. Accordingly, the court denies Congdon a certificate of appealability.

**IT IS THEREFORE ORDERED** that Congdon's petition for a writ of a habeas corpus is **dismissed**. The court denies Congdon a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of February, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge